No. 01-014

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 152

YARBRO, LTD., a Nevada corporation, d/b/a
LAKE MEAD RADIOLOGISTS,

        Plaintiff and Appellant,

    v.

MISSOULA FEDERAL CREDIT UNION,
a Montana Banking Corporation, DOE
INDIVIDUALS I-X, ROE CORPORATIONS I-X,

        Defendants and Respondents.



FILED

JUL 03 2002

Ed Smith
CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                Honorable John Larson, Judge Presiding

COUNSEL OF RECORD:

        For Appellant:

                John F. Velk, Blakely & Velk, Missoula, Montana

                Charles J. Lybarger, Lybarger, Bunin & Bunin, Las Vegas, Nevada

        For Respondent:

                Ronald A. Bender, Worden, Thane & Haines, P.C., Missoula, Montana

                          Submitted on Briefs:  June 7, 2001

                                    Decided:  July 3, 2002

Filed:

                        _____
                                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Yarbro, Ltd., d/b/a Lake Mead Radiologists (Yarbro), appeals from the order of the Fourth Judicial District Court, Missoula County, granting summary judgment in favor of Respondent Missoula Federal Credit Union (MFCU) and denying Yarbro's motion for a change of venue. We affirm.

¶2 The following issues are dispositive:

¶3 1. Whether the District Court erred in granting summary judgment to MFCU on Yarbro's conversion claim on the grounds that the claim was barred by the applicable statute of limitations.

¶4 2. Whether the District Court erred in granting summary judgment to MFCU on Yarbro's breach of warranty claim on the grounds that Yarbro was responsible for the acts of its own employees.

¶5 3. Whether the District Court erred in denying Yarbro's motion for a change of venue.

FACTUAL AND PROCEDURAL BACKGROUND

¶6 Yarbro is a radiologist firm operated as Lake Mead Radiologists in Henderson, Nevada. Kathryn McLean (McLean) was employed by Yarbro from January of 1994 through June of 1996. McLean's responsibilities included data entry, filing, posting payments, processing accounts receivable, sending out statements, billing and accounting. During the course of her employment, McLean forged signatures on over a hundred checks and money orders. McLean would intercept checks paid on patient accounts which were payable either

2

to Lake Mead or to individual doctors; she would endorse the checks on behalf of Lake Mead or the individual doctors and make them payable to herself. Then, McLean would endorse the checks in her name and mail them to MFCU for deposit into her personal account there. The last deposit to McLean's MFCU account was made on June 7, 1996. The value of the forged checks and money orders exceeded $60,000.00.

¶7 On June 9, 1999, Yarbro filed a complaint against MFCU in Missoula County seeking damages in the amount of the forged checks and money orders, alleging unlawful conversion of negotiable instruments by MFCU, under § 30-3-419, MCA (UCC § 3-419), and breach of transfer warranties, under § 30-4-207, MCA (UCC § 4-207). On July 3, 2000, Appellant moved for a change of venue, asserting that, because Honorable Edward McLean, a judge of the Fourth Judicial District, is the uncle of McLean, an impartial trial could not be conducted in Missoula County. On July 6, 2000, MFCU filed a motion for summary judgment, arguing Yarbro's conversion claim was barred by statute of limitations, that Yarbro's breach of warranty claim was barred because Yarbro is responsible for the acts of its own employees, and further, that Yarbro could not bring a claim for breach of transfer warranties against MFCU. On September 7, 2000, the District Court, Honorable John W. Larson presiding, denied Yarbro's motion for change of venue and granted summary judgment in favor of MFCU. From that judgment and order, Yarbro appeals.

## STANDARD OF REVIEW

¶8 Summary judgment is appropriate when the pleadings, discovery and affidavits establish that there is no genuine issue as to any material fact and that the moving party is

3

entitled to a judgment as a matter of law. Rule 56(c), M.R.Civ.P. We review an order granting summary judgment *de novo*, by applying the same evaluation based on Rule 56, M.R.Civ.P., as the district court. *Schumacker v. Meridian Oil Co.*, 1998 MT 79, ¶ 14, 288 Mont. 217, ¶ 14, 956 P.2d 1370, ¶ 14.

¶9 The moving party must demonstrate that no genuine issues of material fact exist. Then the burden shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. *Bell & Marra, PLLC v. Sullivan*, 2000 MT 206, ¶ 25, 300 Mont. 530, ¶ 25, 6 P.3d 965, ¶ 25. If the court determines that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. *Bell*, ¶ 25. This Court reviews a district court's legal conclusions to determine if they are correct. *Bell*, ¶ 25.

¶10 The party opposing summary judgment cannot rely on mere allegations in the pleadings, but must present its evidence raising genuine issues of material fact in the form of affidavits or other sworn testimony. *Schumacker*, ¶ 15; see also *Klock v. Town of Cascade* (1997), 284 Mont. 167, 943 P.2d 1262. While this Court resolves any inferences drawn from the factual record in favor of the party opposing summary judgment, mere denial, speculation, or conclusory statements are insufficient to raise a genuine issue of material fact. *Schumacker*, ¶ 15.

## DISCUSSION

¶11    1. Did the District Court err in granting summary judgment on the grounds that Yarbro's conversion claims were barred by the applicable statute of limitations?

4

¶12    In Count I of its Complaint, Yarbro alleged unlawful conversion of negotiable instruments by MFCU pursuant to § 30-3-419, MCA (UCC § 3-419). The District Court granted summary judgment to MFCU on this count, finding the claim was time barred under the applicable statute of limitations, a holding which Yarbro contends was erroneous.

¶13    When interpreting the Uniform Commercial Code, we bear in mind its purposes and objectives. These objectives include the uniform application of commercial law among the various jurisdictions, the simplification and modernization of the law governing commercial transactions, and the presumption in favor of predictability and finality of commercial transactions. See § 30-1-102, MCA, "Purposes–rules of construction–variation by agreement."

¶14    The applicable statute of limitations for conversion of negotiable instruments is set forth in § 30-3-122, MCA. Subsection (7) states:

> Unless governed by other law regarding claims for indemnity or contribution, an action for conversion of an instrument, for money had and received, or for like action based on conversion; for breach of warranty; or to enforce an obligation, duty, or right arising under this chapter and not governed by this section must be commenced within 3 years after the cause of action accrues.

Section 30-3-122(7), MCA. The Official Comments state that this subsection covers conversion cases and other actions to enforce obligations or rights arising under Article 3, and that the three-year statute of limitations established by the statute "follows traditional law in stating that the period runs from the time the cause of action accrues."

5

¶15    Section 27-2-102, MCA, sets forth the traditional rule in Montana regarding the accrual of a cause of action, and states in part:

> (1) For purposes of statutes relating to the time within which an action must be commenced:
>
> (a) a claim or cause of action accrues when all elements of the claim or cause exist or have occurred.
>
> . . .
>
> (2) Unless otherwise provided by statute, the period of limitation begins when the claim or cause of action accrues. Lack of knowledge of the claim or cause of action, or of its accrual, by the party to whom it has accrued does not postpone the beginning of the period of limitation.

Section 27-2-102(1) and (2), MCA.

¶16    In this case, Yarbro's cause of action against MFCU for conversion accrued for each check at the time the check was deposited by McLean in her MFCU account and MFCU credited McLean's account therefor. It is not disputed that the last deposit to McLean's MFCU account was made on June 7, 1996. Because the elements of conversion for all transactions existed or occurred by then, the three-year statute of limitations for all claims began to run, at the latest, on June 8, 1996. Yarbro's complaint was not filed until June 9, 1999.

¶17    Yarbro argues the discovery doctrine should be applied to the statute of limitations for conversion in this case. The discovery doctrine is an equitable exception to the general rule that the statute of limitations begins to run as soon as the cause of action accrues. According to the discovery doctrine, "the applicable statute of limitations begins to run once the plaintiff

knew or should have known that a cause of action exists." *Kitchen Krafters, Inc. v. Eastside Bank of Montana* (1990), 242 Mont. 155, 160, 789 P.2d 567, 570.

¶18 Yarbro claims it had no reason to suspect that a conversion had occurred prior to June 10, 1996, when it first discovered that McLean had engaged in fraudulent activities. Further, Yarbro asserts it was entitled to obtain copies of the checks in question from MFCU and inspect the checks to determine MFCU's involvement in the matter. Moreover, Yarbro claims when it knew or should have known of the forgeries is a question of material fact that needs to be determined, and thus, summary judgment is inappropriate.

¶19 Yarbro's assertion that the discovery doctrine should be applied here is premised upon two arguments. First, it cites the UCC statutes of limitation set forth at § 30-4-207(5), MCA, and § 30-3-417(4), MCA, both of which provide that "a cause of action for breach of warranty under this section accrues when the claimant has reason to know of the breach." However, by the plain meaning of these provisions and their placement within statutes addressing breach of warranty, they are applicable only to breach of warranty actions, not conversion. These statutory provisions thus have no application to Yarbro's conversion claim.

¶20 Secondly, Yarbro cites the concealment of McLean in this matter and our case law's application of the discovery doctrine in certain instances. Although the application of the discovery doctrine to a UCC conversion case is one of first impression in Montana, substantial consideration of the issue has occurred in other courts, with significant agreement.

7

¶21 In *Menichini v. Grant* (3rd Cir. 1993), 995 F.2d 1224, the federal circuit court declined to apply the discovery doctrine to a UCC § 3-419 conversion case stating, "Where a party not engaging in fraudulent concealment asserts the statute of limitations defense, most courts have refused to apply the discovery rule to negotiable instruments, finding it inimical to UCC policies of finality and negotiability." *Menichini*, 995 F.2d at 1230.

¶22 In *Husker News Co. v. Mahaska State Bank* (Iowa 1990), 460 N.W.2d 476, the Iowa Supreme Court offered similar reasons for not applying the discovery doctrine to a UCC § 3-419 conversion action and reported that other states are nearly unanimous in their refusal to apply the discovery rule in cases of conversion. It stated, "We find their decisions persuasive and note that such authority is entitled to even greater deference where consistency and uniformity of application are essential elements of a comprehensive statutory scheme like . . . the Uniform Commercial Code." *Husker News Co.*, 460 N.W.2d at 478.

¶23 The Court of Appeals for the District of Columbia Circuit also endorsed this approach. In *Kuwait Airways Corp. v. American Sec. Bank* (D.C. Cir. 1989), 890 F.2d 456, the court rejected the application of the discovery rule to a UCC § 3-419 action and held that "the discovery rule does not apply to toll the statute of limitations where a bank is sued for conversion on a forged endorsement," unless the bank fraudulently concealed the transaction. *Kuwait Airways Corp.*, 890 F.2d at 462; quoting *Southwest Bank & Trust Co. v. Banker's Commercial Life Ins. Co.* (Texas 1978), 563 S.W.2d 329.

¶24 Two reasons often cited for rejecting the application of the discovery doctrine in conversion cases are the need for finality in transactions involving negotiable instruments,

8

and the presumption that a property owner knows what and where his property is. *Husker News Co.*, 460 N.W.2d at 478.

¶25 The facts in *Husker News Co.* were similar to, but even more harsh than, those now before the Court. In *Husker*, the plaintiff's employee collected customer payments, forged the employer's indorsement on the checks, and deposited the checks into his personal account. The employee concealed his embezzlement from his employer, and the employer did not discover the employee's actions until after Iowa's statute of limitations had already run. When the defendant bank interposed the statute of limitations defense to the plaintiff's conversion action, the plaintiff asserted the discovery doctrine, claiming the employee's fraudulent concealment prevented discovery. Citing the UCC objectives of predictability and finality in commercial transactions, the Iowa Supreme Court refused to apply the discovery doctrine to conversion actions:

> We think the considerations of finality and predictability represented by the majority rule are substantial and outweigh the countervailing equities which led us to apply the discovery rule in other cases. The strength of our system of commerce depends on a negotiable instrument law that is mechanical in application. . . . In conclusion, we hold that the discovery rule does not apply to conversion actions under Iowa Code section 554.3419(1)(c) [UCC § 3-419]. The plaintiff's cause of action against the Mahaska State Bank is therefore barred by the statute of limitations. The decision of the district court granting the bank's motion for summary judgment is affirmed.

*Husker News Co.*, 460 N.W.2d at 478-79.

¶26 The court's rationale in *Kuwait Airways Corp.* was that an employer should be able to discover an employee who is forging checks within the applicable period of limitation by exercising reasonable and prudent business practices. "There can be no question in the

9

instant case that an ordinary business could have detected the siphoning off of funds within a three-year period of their conversion." *Kuwait Airways Corp.*, 890 F.2d at 461.

¶27 Yarbro's attempt to trigger application of the discovery doctrine by asserting McLean's fraudulent concealment is not well founded. McLean was Yarbro's employee, not MFCU's employee, and Yarbro has not alleged any concealment on the part of MFCU. We have held that "when defendant's 'fraudulent concealment' prevents a plaintiff from discovering a cause of action, the statute of limitations is generally tolled." *Yellowstone Conference of the United Methodist Church v. D.A. Davidson, Inc.* (1987), 228 Mont. 288, 294, 741 P.2d 794, 798. For fraudulent concealment to occur, "there must be an affirmative act committed by the defendant, and the affirmative act must be calculated to obscure the existence of the cause of action." *Yellowstone Conference of the United Methodist Church*, 228 Mont. at 294, 741 P.2d at 798. Yarbro has set forth no evidence claiming MFCU fraudulently concealed McLean's actions or Yarbro's discovery thereof.

¶28 We decline Yarbro's suggestion to apply the discovery doctrine to Yarbro's conversion claim. The plain meaning of § 30-3-122(7), MCA, requires commencement of a conversion action within three years of the action's accrual. Further, the public would be poorly served by a rule that effectively shifts the responsibility for careful bookkeeping and employee supervision away from those in the best position to monitor accounts and employees. The strict application of the three-year statute of limitations, while predictably harsh in some cases, best serves the goals advanced by the Uniform Commercial Code.

10

¶29 Having determined the discovery doctrine is not applicable in this case, and that the statute of limitations was not tolled by concealment, Yarbro's argument that summary judgment cannot be entered because a question of fact remains regarding when Yarbro knew or should have known of McLean's forgeries must fail. The material facts necessary for determining if summary judgment is appropriate by reason of statute of limitations are the dates of the conversion and the filing of Yarbro's Complaint. These facts are not in dispute, and therefore, the District Court correctly held that MFCU is entitled to judgment as a matter of law on Yarbro's conversion claim.

¶30 2. Did the District Court err in granting summary judgment to MFCU on Yarbro's breach of warranty claim on the grounds that Yarbro was responsible for the acts of its own employees?

¶31 In Count II of its Complaint, Yarbro alleged that MFCU is a collecting bank and sought damages against MFCU for breach of transfer warranties under § 30-4-207, MCA. Section 30-4-207, MCA, states in part:

> (1) A customer or collecting bank that transfers an item and receives a settlement or other consideration warrants to the transferee and to any subsequent collecting bank that:
>
> (a) the warrantor is a person entitled to enforce the item;
>
> (b) all signatures on the item are authentic and authorized;
>
> (c) the item has not been altered;
>
> (d) the item is not subject to a defense or claim in recoupment stated in 30-3-305(1) of any party to the item that can be asserted against the warrantor; and

11

> (e) the warrantor has no knowledge of any insolvency proceeding commenced with respect to the maker or acceptor or, in the case of an unaccepted draft, the drawer.

Section 30-4-207(1), MCA.

¶32   The District Court granted summary judgment to MFCU on Yarbro's breach of warranty claim, holding, pursuant to § 30-3-420, MCA, that an employer who entrusts an employee with responsibility for processing instruments is liable if that employee fraudulently endorses an instrument, except to the extent that a party taking the instrument for value fails to exercise ordinary care and thereby contributes to the loss. The District Court found that Yarbro produced no evidence to refute MFCU's factual assertions that McLean was an employee entrusted with responsibility for processing instruments and that MFCU had exercised ordinary care in accepting the instruments for payment. Therefore, it entered summary judgment on the breach of warranty claim. On appeal, Yarbro argues that McLean's actual or apparent authority to process instruments and whether MFCU exercised ordinary care, were questions of fact which precluded summary judgment.

¶33   MFCU argued to the District Court, and also to this Court on appeal, that while Yarbro was indeed responsible for the actions of its own employees, and that MFCU exercised ordinary care in taking the instruments for payment, it was unnecessary to reach these issues because the law does not provide Yarbro a breach of warranty remedy against MFCU in the first instance. MFCU's analysis is correct.

¶34   Section 30-4-207(1), MCA, provides that a customer or collecting bank that transfers an instrument and receives consideration therefor makes certain warranties "to the transferee

12

and to any subsequent collecting bank." Thus, transferors, who place or transfer an instrument within the stream of commercial transactions which repeatedly accept the instrument and pay thereon until the instrument reaches the payor bank which makes the final payment from the customer's account, warrant to their transferees, who are those to whom they pass the instrument and from whom they receive payment, as follows: that they, the transferors, are entitled to enforce the instrument for payment, that the signatures on the instrument are authentic and authorized, that the instrument has not been altered, that the instrument is not subject to a defense or claim of recoupment under § 30-3-305, MCA, and that the transferor is not aware of an insolvency proceeding which may affect payment on the instrument. A transferee receives the instrument and makes payment to the transferor on the basis of these warranties, and is entitled to make a breach of warranty claim against the transferor in the event the instrument is later determined to be fraudulent and a reimbursing payment to the transferee is denied.

¶35 Under these provisions, and the facts here, Yarbro is not a transferee. It did not receive the instruments and the associated transfer warranties from MFCU, and did not make payment to MFCU in consideration for the instruments. As Yarbro received no instrument or transfer warranty from MFCU, it is not entitled, under the terms of the statute, to bring a cause of action for breach of that warranty against MFCU. The UCC provides remedies to Yarbro for the losses it sustained, but breach of transfer warranty against MFCU is not one of them.

13

¶36 The District Court granted summary judgment on Yarbro's breach of warranty claim on the grounds that Yarbro was responsible for McLean's actions under § 30-3-420, MCA. Although the basis of the District Court's summary judgment order was incorrect, it reached the correct result. If the district court is correct in its conclusions, it is immaterial what reasons were assigned therefor. *Laurie v. M. & L. Realty Corp.* (1972), 159 Mont. 404, 408, 498 P.2d 1192, 1194. The District Court correctly concluded that summary judgment on Yarbro's breach of warranty claim against MFCU was appropriate.

¶37 3. Did the District Court err in denying Yarbro's motion for a change of venue?

¶38 Yarbro argues that the District Court erred in denying the motion for a change of venue it filed, asserting that because Honorable Edward McLean was a potential witness in the case, a conflict of interest was presented that justified moving the case to another judicial district. Section 25-2-201, MCA, states when change of venue is required:

> The court or judge must, on motion, change the place of trial in the following cases:
>
> (1) when the county designated in the complaint is not the proper county;
>
> (2) when there is reason to believe that an impartial trial cannot be had therein;
>
> (3) when the convenience of witnesses and the ends of justice would be promoted by the change.

Yarbro's motion was based upon § 25-2-201(2), MCA. Yarbro asserts that an impartial trial cannot be had in Missoula County because Kathryn McLean is Judge McLean's niece.

14

Because Kathryn McLean is a party to this action,[1] and Judge McLean is a judge in Missoula County, Yarbro asserts that it is a conflict of interest for Honorable John W. Larson to preside over this matter, as Judge Larson and Judge McLean work in the same courthouse and are judges in the same judicial district.

¶39 Yarbro filed its motion for change of venue on July 3, 2000. MFCU's answer had been filed on September 10, 1999. A plaintiff must raise the issue of venue within 20 days of the filing of the defendant's answer or

> whenever at some time more than 20 days after the last pleading has been filed an event occurs which thereafter affords good cause to believe that an impartial trial cannot be had under ground 2 of said section 25-2-201, and competent proof is submitted to the court that such cause of impartiality did not exist within the 20-day period after the last pleading was filed, then the court may entertain a motion to change the place of trial under ground 2 of section 25-2-201 within 20 days after that later event occurs.

Rule 12(b)(iii), M.R.Civ.P. Yarbro's motion for change of venue was not filed within 20 days of MFCU's answer. Moreover, Yarbro has not pointed to any event that occurred 20 days before Yarbro filed its motion for change of venue that establishes good cause to believe that an impartial trial cannot be had in Missoula County. To the contrary, the record reflects that Yarbro learned of the relationship between Kathryn McLean and Judge McLean in the fall of 1999, yet did not file its motion for change of venue until July 3, 2000, long after expiration of the 20 days provided by Rule 12, M.R.Civ.P. Because Yarbro's motion for change of venue was not timely, the District Court correctly denied the motion.

---

[1]Although not named in the caption, McLean was joined in the action as a third party defendant.

15

¶40    The District Court properly granted summary judgment in favor of MFCU on Yarbro's conversion and breach of warranty claims, and correctly denied Yarbro's motion for change of venue. Its judgment is affirmed.

_____
                        Justice

We concur:

_____

_____

_____
                        Justices

16

Justice Terry N. Trieweiler concurring.

¶41 I concur with the majority Opinion.

¶42 I write separately to note that while I agree with the majority's rejection of the discovery doctrine as applied to the facts in this case, I would not foreclose possible application of that doctrine to conversion actions presented under other circumstances.

¶43 The discovery doctrine is an equitable principle which may depend on the circumstances of each case. For example, in spite of my great respect for the state of Iowa, I would not follow *Husker News Co. v. Mahaska State Bank* (Iowa 1990), 460 N.W.2d 476. I mention that because it is apparently cited with approval in the majority Opinion.

¶44 Except for this qualification, I otherwise agree with the majority Opinion.

_____
Justice